PEOPLE ex rel. AMM et al. v. STATE BOARD OF RAILROAD COM'RS et al.

(Supreme Court, Appellate Division, Third Department. March 8, 1905.)

RAILROADS—CONSTRUCTION—CERTIFICATE OF NECESSITY—PROTEST OF PROPERTY OWNERS.

The certificate of public necessity and convenience required by section 59 of the railroad law, as amended by Laws 1895, p. 317, c. 545, as a condition precedent to the construction of a railroad, should not be granted by the Railroad Commissioners to a company desiring to construct a freight switch road along a valuable water front, which has not been developed, and which, in its present condition, needs no freight facilities, as the land fronting thereon is unimproved agricultural land, on which no manufactories have been established, where over 60 per cent. of the owners of the land and proprietors of the water frontage oppose the construction of the road.

Certiorari by the people, on the relation of James Amm and others, to review the action of the State Board of Railroad Commissioners in granting to the Niagara Transfer Railway Company a certificate of public necessity and convenience for the construction of a steam railroad. Determination reversed.

Argued before PARKER, C. J., and SMITH, CHASE, CHESTER, and HOUGHTON, JJ.

Simon Fleischmann and Pooley & Spratt, for relators.

Roberts, Becker, Messer & Groat (Tracey C. Becker and Spencer Clinton, of counsel), for the Niagara Transfer Ry. Co.

HOUGHTON, J. The Board of Railroad Commissioners granted to the Niagara Transfer Railway Company a certificate of public necessity and convenience, under section 59 of the railroad law (Laws 1895, p. 317, c. 545), for the building of a steam railroad from the outskirts of the city of Buffalo to the village of Tonawanda, a distance of some 17 miles. The certificate is not claimed to have been issued because public convenience demanded greater direct facilities between the city of Buffalo and the village of Tonawanda. The road is projected as a freight switch road, and its primary purpose is the development, for manufacturing and shipping purposes, of a tract of land of about 2,200 acres, having a water frontage on the Niagara river of about four miles. Two lines of railway are proposed—one along the bank of the river, and the other a few hundred feet back, and

near the Erie Canal; the one cutting off the adjacent lands from the canal, and both cutting off the lands from the river. The owners of more than 62 per cent. of this tract, representing more than 66 per cent. of its entire water frontage, filed remonstrances against the granting of the certificate, and have brought this proceeding to set it aside.

It is not claimed there is any freight now in sight for the proposed road, nor will there ever be any passengers of any amount. The reason urged for the necessity of the road and the propriety of the certificate is that its construction will afford means of transportation for factories to be established on the 2,200-acre tract, and for the large shipping interests which it is hoped a development of the water front will bring.

In People ex rel. Cluett, Peabody & Co. v. Commissioners, 95 App. Div. 38, 88 N. Y. Supp. 522, this court held that a freight railroad, injurious to the owners of the property through which it ran, ought not to be thrust upon them for their convenience against their protest. The reasons which impelled us to set aside the certificate in that case apply with much increased force in the present. Here the lands are agricultural lands, wholly unimproved, having a water frontage concededly of value, and possibly in time of great value. The general public is not interested in the development and improvement of these lands, except in an economic way. All improvements benefit the public, but we know of no rule of law which can compel an individual or private corporation to develop or improve his property for the benefit of the general public. The several owners of this tract of land have a right to develop it or to hold it for speculative purposes, and a railway which cuts off the most valuable rights in connection with their land, and diminishes or practically destroys its value as a whole, should not be thrust upon them against their will. It is true that the protest of an individual owner should not prevent the building of a railroad called for by public necessity, and which would serve the public convenience. Here no necessity is to be served, except such as may grow up on these lands after manufacturing plants shall be established. The situation is much different from the projecting of a railway through a vast, undeveloped country. In such a case individual rights are insignificant compared with the general good. In the present case the general good is insignificant compared with individual rights. If a freight railroad is desirable through this tract of land it should be located with some regard, at least, to the wishes of its owners. The testimony is overwhelming that the proposed road meets no public necessity, except such as may hereafter be developed upon these lands, and that the cutting off of the water frontage would be a very great damage to the owners—exceedingly difficult, if not impossible, to be ascertained by condemnation, in the present undeveloped state of the property. In view of the strenuous objection of the large majority of the owners of the property, we think the evidence did not justify the granting of the certificate of necessity and convenience.

The determination of the Railroad Commissioners should be reversed, upon the law and the facts, with $50 costs and disbursements to the relators. All concur, except SMITH, J., not voting.